SARAH BASKIN *vs.* MAX PASS & others.

Suffolk.   November 9, 1938. —February 4, 1939.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Champerty. Contract,* Validity.   *Attorney at Law.   Equity Pleading and Practice,* Intervening petition, Appeal.

A petition to intervene in a suit in equity, not formally allowed, was treated as allowed in view of proceedings in the trial court respecting the intervener's claim and a final decree enforcing it.

An agreement, whereby an attorney at law was employed to prosecute a suit to enforce a claim of his client and was to look solely to the proceeds thereof for his compensation and his client was to furnish the money necessary to pay the expenses of the suit, was champertous.

On appeal in a suit in equity, this court refused relief on a contract whose champertous nature was apparent on the facts found, although its invalidity was not pleaded nor raised nor noticed in the trial court nor argued in this court.

BILL IN EQUITY, filed in Superior Court on March 21, 1936.

The final decree was entered by order of *Donahue, J.*

*S. Fishman,* for the plaintiff.

*R. H. O. Schulz & M. Shore, pro se,* submitted a brief.

COX, J.   This is a bill in equity to reach and apply money alleged to be due the principal defendant, Pass, hereinafter referred to as Pass, from Freed-Malins Electric Company, Incorporated, Charles Freed, and Samuel Malins, the amount of which was alleged to be in litigation in a suit in equity brought by Pass against the last named defendants.   Pass alleged in his answer, among other things, that he had been and would be subject to great expense in prosecuting his claim against Freed and the others; that he owed his attorneys a large sum of money for legal services and other expenses; and he asked that all legal and other expenses that he might be put to in prosecuting his claim against Freed and the others be ascertained and ordered to be paid to his attorneys before the plaintiff should be

allowed to reach and apply any funds that might be found due and payable by Freed and the others to him.

The case was referred to a master who reported that Pass was indebted to the plaintiff in the sum of $2,036.27 with interest at ten per cent per annum from January 14, 1933. This finding, however, is not borne out by the subsidiary facts found by the master and will be dealt with later on.

After the master's report had been filed, Robert H. O. Schulz and Mordacai Shore were permitted by the trial judge to file a petition to intervene. The petition alleged that they were employed by Pass, as attorneys, to represent him in the suit in equity brought against Freed and others; that they had been and were representing Pass; that he was indebted to them for their services in that case; that "said attorneys knew at the time of their employment that said Pass had no money and that they must look solely to the amount of money that could be recovered in said proceedings for their compensation"; that "said Pass promised and agreed as an inducement for said attorneys to represent him in said proceedings . . . that they were to collect from said Charles Freed *et als* the amount of the contemplated judgment that might be recovered and take therefrom any and all moneys due to them for their services as attorneys, paying the balance, if any, to said Pass"; and further that "said Pass offered to assign said judgment or execute a note secured by an assignment of said contemplated judgment." They asked that the amount of their fees due them "from said Pass in his proceedings against Charles Freed *et als* be ascertained and determined and that said fees due to said Schulz and Shore be ordered paid to them before said Sarah Bascom [*sic*], the plaintiff in this action, be allowed to reach and apply any funds that may be recovered by said Pass in his action against said Charles Freed *et als*." The master had already reported that Pass employed Schult (*sic*) and Shore to prosecute the claim against Freed and the others; that "Pass at that time was without funds and said attorneys necessarily must look to the proceeds of said litigation for payment of their services."

He further stated: "I find they did so look to said proceeds and performed the services hereinafter set forth in the justified expectation that they would be paid out of said funds."

After the petition to intervene had been filed, the suit of Pass against Freed and the others was settled for $1,700 which, in accordance with an interlocutory decree in the case at bar, was deposited with the clerk of the Superior Court, and the present bill in equity, as against Freed, Malins, and Freed-Malins Electric Company, Incorporated, was dismissed. The case was again referred to the master to determine the amount of the value of the services of Schulz and Shore. The master reported that the services were reasonably worth $1,100.

The case then came on to be heard before a judge upon the question of a final decree, and "in connection therewith certain evidence was heard by . . . [him] as to the contract of the interveners . . . with . . . Pass." The judge filed findings of fact and order for decree. He found that "the interveners were employed as attorneys for the plaintiff Pass in the case of Pass-*v*-Freed-Malins Electrical Co., Inc., under an agreement by which Pass was to furnish the necessary money to pay all expenses in connection with the prosecution of his claim and that his attorneys were to look *solely* [italics ours] to any proceeds of such suit for their compensation." In accordance with the order for decree, a final decree was entered establishing the debt of Pass to the plaintiff and ordering that out of the $1,700 deposited the clerk of court should pay to Schulz and Shore, "on their petition to intervene," $1,100, and to the plaintiff, $600. The final decree adopted the findings of the master as to the amount due from Pass which is subject to the error hereinbefore referred to. The defendant Pass and the plaintiff appealed from the final decree.

The plaintiff has filed in this court a motion to dismiss the appeal of Pass, but this appeal is not before us. It does not appear to have been entered in this court by Pass, although the record discloses that he appealed from the final decree. "The plaintiff alone — as the docket entries disclose

— has taken steps to bring the case here." *Styrnbrough* v. *Cambridge Savings Bank*, 299 Mass. 22, 24.

The plaintiff contends that the petition to intervene was never allowed by the court, and there is nothing in the record or docket entries to show that it was. We think, however, that we should treat it as allowed in view of the proceedings in the trial court. The facts disclose that it was a case for intervention. *Piper* v. *Childs*, 290 Mass. 560, 563, 564.

Pass has filed no brief and, aside from the contention of the plaintiff that has just been disposed of, the arguments of the plaintiff and the interveners are whether the latter had a lien for their services on the proceeds of the suit against Freed and the others that had priority over the plaintiff's claim. We do not think that it is necessary to consider this question, for if we assume that the interveners' agreement with Pass was sufficient to create a lien, as they contend, nevertheless they are not entitled to benefit thereby for the reason that their agreement was champertous.

"As between an attorney at law and his client it is of the essence of champerty that the attorney, having no previous interest to justify him, upon recovery is to have as his own some part of the thing recovered, or some profit out of it. *Thurston* v. *Percival*, 1 Pick. 415. *Lathrop* v. *Amherst Bank*, 9 Met. 489. *Lancy* v. *Havender*, 146 Mass. 615. But an agreement that one not previously interested and who agrees to prosecute a suit, upon recovery shall have a share of the thing recovered is not for that reason alone champertous. The bargain to be illegal must have the further element that the attorney's services shall not constitute a debt due him from the client, and that his prospective share is to be the only compensation which the attorney shall receive. If in effect he 'agreed to look for his compensation to that alone which might be recovered, and thus to make his pay depend upon his success' the bargain is champertous and void. *Ackert* v. *Barker*, 131 Mass. 436, 438. 'Where the right to compensation is not confined to an interest in the thing recovered, but gives a right of action against the party,' the agreement is not champertous.

*Blaisdell* v. *Ahern,* 144 Mass. 393, 395. See *Scott* v. *Harmon,* 109 Mass. 237. But the contract may be illegal without stipulating in terms that compensation is to be solely by way of an interest in the thing to be recovered. That element of illegality may be inferred from an agreement to prosecute at one's own expense and risk unless successful. *Belding* v. *Smythe,* 138 Mass. 530. See *Williams* v. *Fowle,* 132 Mass. 385, 388." *Hadlock* v. *Brooks,* 178 Mass. 425, 432. *Gargano* v. *Pope,* 184 Mass. 571. *Holdsworth* v. *Healey,* 249 Mass. 436. *Weinberg* v. *Magid,* 285 Mass. 237. *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304, 312, 313. The fact that Pass was to furnish the necessary money to pay the expenses makes no difference. *Lathrop* v. *Amherst Bank,* 9 Met. 489. *Ackert* v. *Barker,* 131 Mass. 436, 438. *Holdsworth* v. *Healey,* 249 Mass. 436, 439. There is no suggestion that the interveners had any claim against Pass other than that which arose out of their employment by him in his case against Freed and others. The judge found that the interveners were to look solely to any proceeds of that suit for their compensation. The case comes squarely within the cases cited and is distinguishable from *Walsh* v. *White,* 275 Mass. 247.

Neither the plaintiff nor the interveners have raised any question of champerty. Champerty was not set up in defence nor was it noticed in the Superior Court. "But no court will consciously lend its aid for the enforcement of an illegal contract." *Claflin* v. *United States Credit System Co.* 165 Mass. 501, 503, and cases cited. *Goss* v. *Austin,* 11 Allen, 525, 527. *Reuter* v. *Ballard,* 267 Mass. 557, where it was said at page 563: "An illegal contract, or the illegal performance of a legal contract, which is apparent upon undisputed facts will not be enforced in this court, although its illegality was not set up in the answer of the defendant, raised at the trial or noticed in the court where the plaintiff had a verdict." *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304, 312, 313.

The subject matter of the plaintiff's suit was a note for $6,000. The master's subsidiary findings disclose that payments amounting to $3,116.27 were made, and that Pass

was entitled to a further credit of $1,080. He was in error in then finding that the balance due on the note was $2,036.27. The deduction of the payments and the credit from the principal sum leaves a balance due on January 14, 1933, of $1,803.73.

The result is that Pass is indebted to the plaintiff in the sum of $1,803.73, together with interest at the rate of ten per cent per annum from January 14, 1933; that the $1,700 deposited with the clerk of court is to be paid to the plaintiff; that the amount found due the plaintiff is to be reduced by $1,700 upon this payment to her; that the intervening petition is to be dismissed; and that the plaintiff is to have her costs. The final decree is reversed and a decree is to be entered in accordance with this opinion.

*Ordered accordingly.*